## Clara C. Driscoll, Adm'x, etc., v. Chicago & E. I. R. R. Co.

1. PRACTICE—*Where it is Error to Take a Case from the Jury.*—In an action for damages resulting from the death of the plaintiff's intestate, alleged to have been caused by the negligence of a yardmaster in the employ of the defendant, a railroad company, as vice-principal and overseer of the deceased, under an allegation of the declaration that such yardmaster knew, or in the exercise of ordinary care ought to have known, of the dangerous position of a car which resulted in the death of such intestate; if the evidence fairly tends to show that such overseer did know, or in the exercise of ordinary care ought to have known, of the danger, it is the duty of the court to submit the case to the jury.

2. RAILROADS—*Liability for the Acts of a Vice-principal.*—Where a yardmaster in the employ of a railroad company, under whom was an employe charged with the duty of inspecting cars in the yard to ascertain if they were in condition to move, before such employe had finished his inspection, ordered a train upon which he was engaged to move out, by reason of which the inspector was killed, the company was held liable.

3. NEGLIGENCE—*Responsibility for Deaths Resulting from the Negligence of Employes.*—The court can not conceive that the law would, under the fellow-servant or any other doctrine, hold a man responsible for his own death caused by the moving of a train which he was engaged in examining to see if it was ready to move, when before he had finished his examination, the train was moved by the order of an officer superior to such inspector.

Driscoll v. C. & E. I. R. R. Co.

**Trespass on the Case.**—Death from negligent act. Error to the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed and remanded. Opinion filed November 1, 1901.

**Statement.**—This writ of error is prosecuted to reverse a judgment rendered by the Circuit Court of Cook County, upon a verdict for the defendant directed by the court, in an action on the case.

The general facts are that John Driscoll, deceased, on or about the 29th day of May, A. D. 1893, while working as a night switchman for the defendant in its yards in the city of Chicago, was thrown beneath a car and killed as a result of a car becoming derailed and running against cars on an adjoining track.

On the first trial the plaintiff (appellant) recovered a judgment for $5,000, which on appeal by defendant was affirmed by this court (70 Ill. App. 91), but on a further appeal to the Supreme Court the judgment was reversed and the cause remanded for another trial (176 Ill. 330).

The material facts in detail, not stated in this opinion, may be seen by referring to the Supreme Court opinion.

After the cause was remanded by the Supreme Court no change was made in the pleadings. On the last trial the appellant, in view of the decision of the Supreme Court, abandoned all the counts of her declaration except such as charged negligence on the part of the vice-principal, Blake, and at the close of plaintiff's (appellant's) case the trial judge held in substance that as to such charges of negligence, the case stood as it did when before the Supreme Court on the former record, and, accordingly, instructed the jury to return a verdict for the defendant.

The Supreme Court held that the allegation of the declaration, that Blake " knew, or in the exercise of ordinary care ought to have known, of the dangerous position of this car before the accident, must be shown by actual knowledge, or that the defect complained of had existed for such length of time that Blake, in the exercise of ordinary care, should have discovered it; " and that " no actual

knowledge being shown to exist on the part of Blake, and no affirmative proof to show constructive or implied notice, plaintiff could not recover."

JAMES C. McSHANE, attorney for plaintiff in error.

S. A. LYNDE, attorney for defendant in error; W. H. LYFORD, of counsel.

MR. JUSTICE SHEPARD delivered the opinion of the court.

It must be assumed that there is not in the present record, any more than there was in the former one, any proof of actual knowledge by the vice-principal, Blake, of the condition of the train—being off the track at the rear end—at the time he gave the order to Ward to pull out.

The present question, then, is, does the additional evidence heard at the last trial tend to show that Blake had constructive or implied notice, at the time he gave the order, that the end car was off the track.

If he did have, then, as we understand the decision of the Supreme Court, the appellant was entitled to recover, and, if the evidence fairly tended to show such notice to him, the case ought not to have been taken from the jury.

For the purposes of this case we will predicate that under the evidence, as well as by the seeming acquiescence of appellee, Blake was acting as a vice-principal and, not a fellow-servant with the deceased, and that in the part of the yard where the accident occurred and in doing all that was done there, material to the present issues, his authority was the superior one, which the railroad crews there at work were in duty bound to obey.

The length of time that this end car was off the track is especially mentioned in the opinion of the Supreme Court as a circumstance from which it might be inferred that Blake in the exercise of ordinary care should have discovered it.

The evidence tends very strongly to show that the car was shoved or forced off the track by Hurd's crew. Under Blake's direction, Hurd's crew had in the first place coupled

together about eleven cars that were standing on track No. 1. After that was done Hurd saw that the front wheels of the end car were within about ten or twelve inches of the open end of the rails on which the cars stood. Hurd then proceeded to collect a dozen or fifteen cars from other tracks and, after coupling them together, to back them in on track No. 1, against the eleven cars already standing there in the position described.

Hurd testified that the usual result of pushing an engine with such a number of cars against ten or twelve other standing cars would be to push the latter along, " sometimes two or three feet, and sometimes a car length."

Hurd and his crew were then ordered off by Blake on some remote duties. Neither Ward nor his crew had up to the time that Hurd was ordered away, nor afterward, until as hereafter stated, been in the vicinity of the train in question, nor had any other engine, or crew of men, been near it, so far as appears.

It is true that Hurd testified on his cross-examination by appellee, that he tried to couple gently, and so far as he saw, produced no jar when he pushed the last string of cars against the first eleven, but the inference is strong that the car was shoved off the track at that time. It does not appear that any other force then present could have done it.

About twenty minutes after Hurd and his crew were ordered away on other duty, Blake went to Ward, who with his crew was just finishing some work in another part of the yard, and ordered him to pull out the cars that Hurd had bunched together on track No. 1, telling Ward that they were all ready to pull out, and Ward gave directions accordingly to his engineer. The latter, however, misunderstood the order in some detail, and took his engine too far down into the yard. Driscoll, the deceased, was a member of Ward's crew, and was sent by Ward to bring the engineer and his engine back to the proper place. Blake had also gone down into the part of the yard where the engine had mistakenly proceeded to, and, seeing the engine there, boarded it and had it properly brought back to the

cars that were to be moved, he riding back on it. The engine was then coupled onto the cars, and within two or three minutes afterward, while Ward was looking over the cars to see where they were to go and had proceeded about eight car-lengths in so doing, Blake came again up to Ward and told him where certain cars in the train were situated and ordered the train to be pulled out, and, as Ward testified, gave the signal to the engineer to go ahead. Driscoll had also got back about the time Blake did. Blake says he saw him there after the return of the engine. The next anybody seems to have seen of Driscoll, before he was killed, was when Blake saw a person whom he supposed to be Driscoll, some sixty or ninety feet away from Blake in the direction of the rear end of the train, between the cars being moved and those standing on the next track, not far from the point where he was afterward found dead.

It was doubtless a part of Driscoll's usual duty to inspect the train being about to be moved by his crew before it was pulled out and see that it was ready to be moved, and the reasonable inference, from the time he spent in performing the order given him to go down into the yard and bring the engine back, and from the direction he was going right after his return from that duty, and just before he was killed, is that he was engaged with all reasonable diligence in examining the train to be moved, but had not completed it, when he was caught and killed.

We can not conceive that the law would, under the fellow-servant or any other doctrine, hold a man responsible for his own death caused by the moving of a train which he was engaged in examining to see if it was ready to move, when before he had finished his inspection the train was moved by the order of an officer superior to him and the rest of his crew. As nearly as can be ascertained from the evidence, the accident happened about forty minutes after Hurd's crew was ordered away, and consequently after the car had been shoved off the track.

Whether the lapse of that length of time was alone sufficient to charge Blake with notice that the train was not

Driscoll v. C. & E. I. R. R. Co.

in a condition to be safely moved, may well be doubted. It is plain there was time enough for Blake to have observed the condition of the car off the track if he had looked at the rear end of the train. It was a situation plainly visible to all who should look, and a glance would have sufficed. It can not be presumed, however, that he did actually look.

But the length of time the car remained in the condition it was may be considered in connection with the other evidence, to see whether Blake ought to have known, in the exercise of ordinary care by him, that the car was off the track. It was shown that Blake frequently performed acts with reference to making trains ready for moving, such as coupling cars, marking on them their destination, etc., and that he actually knew that some of the cars of the train in question were in bad condition and gave directions to Ward as to the disposition to be made of them; it was also shown, or the evidence tended to show, that no examination of the train had been made by Ward's crew before it was moved, although it was customary so to do, and that Blake gave the order to move the train, without waiting for such examination to be made; the evidence also tended to show that no sufficient time was given to complete an examination begun by Driscoll before the train was moved in pursuance of Blake's order to do so; it was also shown that Blake had been assistant yard master in these yards for about two years; that the track in question was an open one with nothing at the open end to prevent a pushed car from running off, and that the usual result of shoving so many cars as was here done, against the number of cars that stood within ten or twelve inches of this open end, was to push the latter forward two or three feet, or even a car length.

It was, in our opinion, under all this evidence, a subject for fair inference and determination by a jury, whether as a matter of fact Blake ought not, in the exercise of ordinary prudence by him, to be held to have impliedly known, when he ordered the train to be moved, the condition it

was in.   We think the declaration is sufficient to permit all these mentioned facts to be proved, and that it was erroneous to have taken their determination from the jury.

We do not think any error was committed in excluding the questions put to Hurd as to what was Blake's duty under the supposed conditions stated in the questions.

It had already been shown, without objection, that the custom was for the crew to look over the train before pulling out, but that if the person in authority there should tell them that everything was all right, the crew would not make the examination, but would go ahead without it. The duty would follow the facts, and is a conclusion from them, which the jury and not the witness might draw. But for the error in taking the case from the jury, under the evidence contained in the record, we will reverse the judgment and remand the cause for another trial.   Reversed and remanded.